[No. 10519.   Department Two.   February 13, 1913.]

## C. E. JOHNSON, *Appellant*, v. M. HEIRGOOD *et al.*, *Respondents.*[1]

MECHANICS' LIENS—SALE AND DELIVERY OF MATERIALS—EVIDENCE
—SUFFICIENCY.   A finding that materials for a building were fur-
nished to the contractor as an independent contractor, are sus-
tained where both contractor and owner testified that such relation
was fully disclosed, and they were corroborated by the bills sent out
with the material.

SAME—MATERIALS—DUPLICATE STATEMENTS—NECESSITY.   It is not
a compliance with Rem. & Bal. Code, § 1133, requiring a person fur-
nishing materials to a contractor for the construction of a building
to mail or deliver duplicate statements to the owner of all such ma-
terials as a condition precedent to a mechanics' lien, for the driver
of the wagon to deliver to the person on the grounds receiving the
material duplicate statements of the contents of the loads, one of
which was to be signed and returned as evidence of the delivery.

SAME—WAIVER.   In such a case, the owner does not waive the
statute by reason of the fact that, when one of the first loads was
delivered, he declined to accept or sign the driver's statements or
receipts, but referred him to the contractor, none of the parties
treating such receipts as the notices contemplated by the statute.

SAME.   Such statute is not waived by the fact that the owner
had actual notice of the delivery of the material, and frequently in-
spected it, and caused part of it to be rejected.

Appeal from a judgment of the superior court for Spo-
kane county, Hinkle, J., entered October 13, 1911, upon
findings in favor of the defendants, after a trial on the
merits before the court without a jury, in an action to fore-
close a mechanics' lien.   Affirmed.

*John M. Gleeson*, for appellant.

*Danson, Williams & Danson* (*George D. Lantz*, of coun-
sel), for respondents.

FULLERTON, J.—On September 5, 1910, the respondents
Heirgood entered into a contract with the respondent

[1]Reported in 129 Pac. 909.

Charles Kolb, whereby the latter, for a stated consideration, undertook to furnish all necessary labor and material and erect for the former a dwelling house on certain lands owned by them, situated in Spokane county. Kolb procured the principal part of the material that entered into the construction of the house from the appellant Johnson, and on his failing to pay for the same, Johnson filed a lien on the dwelling house for the amount of the contract price of the materials furnished. Subsequently Johnson began the present action to foreclose the lien. Issue was joined on the allegations of his complaint and a trial had, resulting in findings and a judgment denying his right to foreclose the lien. He appeals.

The record presents chiefly questions of fact. It is not important that these be discussed in detail or at length. The first is, to whom was the lumber actually sold. It is the appellant's contention that it was sold to the respondents Heirgood, or, more accurately perhaps, to Kolb and the Heirgoods jointly. He testified that Mr. Heirgood appeared at his place of business sometime in the summer of 1910, looked over his materials, inquired concerning prices, and where good carpenters could be found, saying that he contemplated building a house and desired to get some idea as to its probable cost. That he later appeared with Mr. Kolb and again looked over the materials, stating that Mr. Kolb was going to build the house, and would later furnish him with a statement of the materials required and give him a chance to bid on them. That later the statement was furnished, that he did submit prices, and was given an order by Mr. Kolb for the materials. That he was not informed of the fact that Kolb was building the dwelling under contract, but understood that Kolb had charge of the construction of the building as the agent of the Heirgoods, and that in dealing with Kolb he was dealing with the Heirgoods.

His testimony is directly opposed in all of its material particulars by that of Heirgood, and to the greater extent

by that of Kolb. Their testimony is to the effect that John-
son was informed as to the exact relation between Kolb and
Heirgood, and dealt with Kolb with full knowledge of such
relation. In this they are supported by the written evidence
put into the record by Johnson himself. The written state-
ments of the materials delivered, sent out with each separate
wagonload, are all marked as sold to Kolb, with the name
of Heirgood thereon as the owner of the building at which
the materials were delivered. Without, therefore, further
pursuing the inquiry, we think the trial court was justified
in finding that the materials were sold and delivered to
Kolb as an independent contractor and not as the agent of
Heirgood; at least there is no such preponderance of the
evidence in favor of the opposite view as to warrant us in
reversing the finding.

The statute, Rem. & Bal. Code, § 1133, provides that a
person furnishing materials to a contractor to be used in
the construction of a building shall, at the time the materials
are delivered to the contractor, as a condition precedent to
the right of lien, mail or deliver to the owner of the build-
ing a duplicate statement of all such materials. This re-
quirement of the statute was not complied with in this in-
stance, but the appellant seeks to escape the penalty usually
following such an omission by contending that there was a
waiver of the statutory requirements by the respondents,
and that they had actual notice of the delivery of the ma-
terials.

It appears that as each separate wagonload of material
left the appellant's place of business, the driver of the wagon
was furnished with duplicate statements of the contents of
the load, and was instructed to leave one of such statements
with the person to whom the materials were delivered and
to have the other signed by such person and returned to
the appellant as evidence of such delivery. Among the first
of the materials delivered was a load of cement, intended for
the foundation of the building. The driver, after unloading

the load, tendered the statements to Heirgood, who was present at the place where the material was unloaded. Heirgood refused to accept the statement or receipt for the materials, and pointed out to the driver another person, saying, "He is the man to attend to that and not me." This act is thought to constitute a waiver on the part of Heirgood of the right to insist that duplicate statements of the materials furnished should have been mailed to him as a prerequisite to the right of lien. But plainly it is not so. If the act of Heirgood could be said to be the constituting of the particular individual his agent to act for him, the agency could relate only to the particular load, as no other of the very considerable quantity of material that went into the building was receipted for by this particular person. But the conclusive answer is that neither the appellant, the respondents, nor the drivers of the wagons hauling the material regarded these duplicates as notices under the statute. The scheme was the convenient means adopted by the appellant for keeping account of materials sold, and the signature desired was the signature of the person, or the representative of the person, to whom the materials were sold. This is further evidenced by the fact that the appellant received and retained without question numerous receipts signed by Kolb himself, who is concededly not the owner of the property, nor the person pointed out by Heirgood as the proper person to whom to deliver the statements.

But it is said that the respondents had actual notice of the delivery of the materials, and hence further notice to them by way of duplicate statements was not necessary. The record does indeed show that the respondents resided close to the property on which the house was being built, during the entire time the house was in process of construction, and that Mr. Heirgood frequently inspected the materials, and at times caused the superintending architect to reject some that he thought were not of the quality called for in the specifications for the building. But the right of lien is statutory,

and a substantial compliance with its terms is necessary to obtain its benefits; and since the statute makes this one form of notice essential, and places the burden of giving it upon. the person asserting the lien, the courts should be slow in saying that some other form of notice will answer the purpose. It should not be so held in the present instance.

There is no error in the record, and the judgment will stand affirmed.

MOUNT, MAIN, ELLIS, and MORRIS, JJ., concur.